Is Mr. Matthews here? Yes sir. Okay. The last case this morning will be 053059 Ray v. Department of the Army. Will you be laid by the airlines? There's a combination of the two. I traveled here from Chicago, got delayed in arriving, and unfortunately I had to quickly shower and get here. So I appreciate the court's indulgence in the Army. Okay. May it please the court, your honors, this case is rather fact-intensive with respect to some of the issues discussed before the board. I want to spend just a moment to review the standards that are applicable in this case. Both the board and this court is obligated to follow the teachings of universal camera, and this court has addressed those issues in Kim v. Treasury and Moreno v. Department of Justice, and that is simply the issue of whether or not the trial judge, or in this case the presiding official, has the right to make credibility determinations based upon the facts, and whether or not the board can revisit those determinations. Now in sum, the case falls down to the testimony between Veronica Lee and the appellant in this case, with respect to the two charges that are the most important, that is Specification 6 and Specification 8. And in addressing the issue with respect to Specification 6, the board reviewed the evidence and without directly setting out any reason why the presiding judge did not, or why the deciding judge should not have been sustained on his credibility findings, just generally stated that there was an inherent probability that Veronica Lee was more truthful than Mr. Ray, the appellant. And in making that decision, they then relate and refer back to Specification 8, in which they go into some detail with respect to the testimony in this case. Now, I would simply point out your honors that in general, the presiding official has no jurisdiction to decide anything with respect to a hearing or issue of credibility, except that when the board defers and assigns a case to him, his sole function, his primary function I would submit, is to determine who is telling the truth in a hearing. And with respect to that area, when the case goes back to the board, the board is bound by law and regulation to defer to the issue of credibility. Now, in looking at the board's approach in overturning the presiding judge's decision, they totally shy away from addressing any of the facts upon which to decide. There is a general determination that Mr. Ray should not be believed over the testimony of Ms. Lee. They do not point to any facts except those facts that are premised solely upon the presiding judge's determination of which of those witnesses was most truthful. And in particular, the court will recall from our opening brief that we went into some detail about the conversation between Ms. Lee and Mr. Ray, which apparently occurred outside of some award banquet while standing on the corner, about an incident involving herself and Lt. Col. Borland. Now, the evidence shows in this case, and we would argue, Your Honors, that it's misleading to try and figure out exactly what was said, because that is the job of the trial court. And when we look at the testimony of both witnesses, the testimony of Lt. Col. Borland, which the agency focuses on in detail, in retrospect, to try and point out how it's different than the trial court actually understand. The trial court not only had the responsibility to understand what was said, but also to decide who was telling the truth about what was said. And his determination as to what happened on that sidewalk, and the information that was eventually related to Colonel Sullivan by Mr. Ray, is premised not only upon that dispute in the fineness of exactly what was said, but how it was said. What the testimony was, how the witnesses appeared, and whether in general he believed one witness over the other, the presiding official, in detail, set out the reasons why he believed that Mr. Ray was believable over the testimony of Ms. Lee. And the factors that he used, that we cite here, exactly those factors that he is tasked to evaluate. And indeed, any trial judge, or any decider, in fact, has to look at those particular elements. And in this case, the presiding official came away with a firm conviction that the testimony of Mr. Lee was to believe. Now, the standard goes further than that when the board determined that it was going to overturn the deciding official. They determined that not only was there a misrepresentation, but the misrepresentation was actually a deliberate falsehood on the part of Mr. Ray. And in deciding that, they stepped totally outside of the facts of this case, and opined that on the basis of the fact that he related this to Colonel Sullivan some two weeks after he was relieved of duty, was evident that somehow there's falsification. There is nothing in the record that would indicate that any of that delay was associated with falsification. And in fact, looking at the facts of this situation, when you go back, beginning on February 23rd, when the first letter hit the editorial pages, it's apparent, as the presiding judge pointed out, that this was a high-profile investigation, was a high-profile matter. The commanding general became involved, the commanders of all, and suddenly Mr. Ray was relieved of his duty and sent home. It's not unusual under those circumstances for him to be surprised. Mr. Sullivan, or Colonel Sullivan, testified that his decision to send him home based upon the investigation was essentially sudden. And up until that time, he had absolutely no reason to question his fitness as the deputy commander. And I would submit that this whole problem began, as the presiding judge pointed out, because Colonel Sullivan appointed this civilian to raid the majors. Now that becomes important because later on, the presiding judge opines that the entire atmosphere was one that was tainted with the issue of retaliation against Mr. Ray. On March 15th, when Mr. Ray sent out the two emails, a separate investigation was begun that was called the 15-6 investigation. And the 15-6 investigation is an investigation that the command controls, and in this case, a captain, a military member was appointed, other than the OIG, who was already involved in the investigation, specifically to look at the circumstance. And if you look at their investigation, it's fraught with the issue of reprisal and retaliation. They came away with the recommendation that this man should be referred to a mental referral because of his expressions. Now, eventually it was undisputed that the communication that was made on March 15th to Mr. Pickenheim was a protected disclosure. And the only issue that was left was the issue of whether or not the agency proved, by clear and convincing evidence, that it otherwise would have removed Mr. Ray. We've cited cases and the standard on this issue is somewhat clear that when it's the offense that is the basis of the removal is intricately related to the grounds for removal, there can be an inference that it's related. The board doesn't address this issue, but in general, the board attacks the entire question that look at the evidence that were generated in the investigation. Hundreds of sheets of paper. And on that basis, that must have been enough. Well, where the board failed to address, and we touch upon this in our reply, is that the board failed to require the government to address that issue and their proof, and establishing proof, convincing evidence. And in this case, on the basis that the factual determination by the board was based upon general concepts, it relied upon circumstantial evidence when there was specific factual finding on the part of the presiding judge to overturn the decision. Their reversal was an abuse of discretion and was otherwise not in accordance with law. You want to say your rebuttal now? Mr. Kessler? Good morning. Good morning. This somewhat sounds like a different case than the one that's before the court in that Mr. Matthews is not addressing the only decision which is on appeal or an issue in this case, which is the board's decision. And the board made explicit and detailed findings on all of the specifications and on the evidence, that's the record evidence, the documentary evidence, as well as making an analysis of the hearing. But Mr. Matthews is making a point, as we've made in several of our cases, that the rules that apply in these MSPB cases are somewhat different in situations in which the administrative judge has made a determination that's overturned by the board, and in particular, when the administrative judge's determination is credibility-based. And there's a full set of rules that apply there, and he was, I think, that the board then overrode. Yes, Your Honor, and my point is that that is such a narrow focus in this case that it's being lost. The reason it's a narrow focus is because this court's precedent in Havey and Jackson and other similar cases made clear that the administrative judge's findings are entitled to deference, not complete and unassailable conclusions, but just deference when it's a demeanor-based credibility finding. And that means only deference needs to be afforded, and that's clearly spelled out in the Havey and Jackson cases. And the standard is that the board may still overturn every fact made by the administrative judge. There's no question, when there's no demeanor-based credibility findings, that only the board's findings are at issue. And so the only time this issue even comes into play is the rare circumstance in which there may be demeanor-based credibility findings. You're distinguishing between demeanor-based credibility and credibility that may be based on inferences from the facts that aren't specifically the question of whether the witness had sweaty palms and didn't look the questioner or the judge in the eye. Do you think it's that narrow? Yes, Your Honor. I think the Havey decision points that out in that it makes clear that even in that case there was a discussion about whether there are different standards of deference for demeanor-based credibility versus others, whether it's a special deference. And this court made clear that there's only one level of deference because the only time we're talking about any deference at all is when it is demeanor-based. And that is because of the unique makeup, which Mr. Matthews referred to, of the MSPB, which is it's not like this court where there's an appellate review of the lower decision. It's that the board has entire de novo authority for fact-finding and that any time it wants to displace the administrative judge's decision, it may. Now the only limitation on that, based on Havey and Jackson, is that when the board needs to overturn the demeanor-based credibility findings, that the board needs to articulate a sound basis. Now in Jackson, I believe that was a case where the court found that there was not a sound articulation. That's where that standard comes from. Now in this case, the reason this case is not that difficult is because the board did articulate a sound reason for overturning the decisions. Now I also want to point out there's numerous other issues in this case besides the one or two that Mr. Matthews is focusing on. There were a number of specifications before the board that were sustained even by the administrative judge and then further sustained by the board because they weren't even appealed or petitioned for review by the petitioner. For example, Specification 1 was an abuse of a subordinate. That was a specification that was sustained by the administrative judge and the MSPB, and that's not on appeal here. There was Specification 2 about a comment. Are you saying that even if the board made a mistake on reversing these credibility determinations that there's enough else to sustain what they did? Is that your point? Absolutely. There's not only enough, but I'm not saying there's error, of course. I'm not conceding that there is error. Well, you didn't finish that point before you went into this one, but I wanted to hear what you said. So you're saying yes, that even if those were thrown out, the board found that there's enough else to sustain the removal? Yes, I would say that, but I would also add that I don't even believe that it comes close in this case. I just want to make sure that the focus is not just improperly on one or two issues. Well, how do you answer his argument about them overturning the credibility determinations? In this case, as I explained, the only issues are whether it was demeanor-based, and so what I think the board did in detail was go through its basis for overturning some of the administrative judge's decisions that were even a close call on its credibility. And to the extent that the board relied on documentary evidence to reverse the administrative judge and to the extent that the board was able to point to inconsistencies or irrationalities in the administrative judge's decision, then that's why the board's decision articulates a sound reason. For example, in reversing the administrative judge, the board found that the administrative judge had explicitly mischaracterized the testimony of Lieutenant Colonel Boylan, who had, according to the administrative judge, corroborated a story of Mr. Ray's and therefore discrediting Ms. Lee, which was central to a finding in that specification. And what the board pointed out in this decision in detail is that – when you go back to the transcript, it's very clear that this Lieutenant Colonel Boylan did not say what the judge said he said. He didn't say, I made this statement. What he said was, I heard a rumor that I had made this statement, and that is so critically different. And the board picked up on that, and so that would just be a clear error on its face. This court can validate and see that there was no basis for deferring to the administrative judge's decision because that wasn't based on sweating palms and breathing and other temperament. Along with that decision, there's other issues similarly where the board found that the administrative judge improperly did not consider the fact that for similar conduct – and this is one of the specifications where Mr. Ray was accused of revealing the confidential facts about an evaluation that was being performed – the administrative judge itself sustained that specification in Specification 2 when there was a credibility determination between, did Mr. Ray tell Ms. Aschermein about Major Melendez's evaluation report? And the credibility determination in that case went in the favor of the government. The administrative judge said, well, I'm looking at the two, and I don't really believe Ms. Aschermein, but I don't really believe Mr. Ray. Now, when it came to whether Mr. Ray had made the same disclosure to Ms. Lee in Specification 8, the board, the administrative judge made no reference to its previous finding. And, of course, that Specification 2 wasn't appealed to the board as part of the petition for review, so that wasn't even before the board at the time. But by not referencing this inconsistency where the judge said, well, I just don't believe, Ms. Lee, that Mr. Ray would have made this comment. Well, Mr. Ray made the comment in Specification 2, so why is it that it was inherently incredible that he could make the representation in Specification 8? Now, again, that's something that the board is within its purview, I think, to clearly assess the evidence and see whether there was error in the account of the administrative judge to consider these facts. I don't recall whether the full board said this, but I can't find any indication that they did. Maybe I'm missing it, but in sustaining Specs 6 and 8, they did not go on to say that even without Specs 6 and 8 they would come to the same conclusion. No, they did not say that. So they needed, in effect, they needed 6 and 8 in order to sustain the penalty, I take it. Or at least they didn't say anything to the contrary. Where I'm going with this, obviously, is if we were to conclude that those specifications fall, we'd have to send it back, I suppose, to the board to assess what to do with the case without those specifications. Yes, I believe that's accurate. And, again, those specifications 6 and 8 are not the only issues that made up the board's decision. There were other specifications, including abuse and insubordination, derogatory comments about officers and civilian employees, spreading rumors. These were all specifications that were sustained by the administrative judge and the board as well that are not even on contention before the court. But you still say, in response to Judge Bryson, it should go back if that contingency happens. But you told, in answer to my question earlier, that there was sufficient on this record now, from what the board said, to sustain the removal without a remand. In my opinion, there is. But you just said to Judge Bryson it would have to go back. Well, I believe if what you're looking for is guidance from the board as to whether they would make that determination, it's not contained in their decision that they, in fact, would have sustained absence. So I was expressing my opinion as to the weight of the evidence in pointing out to the court that that's not the only issue that's in the case here of those two specifications. The other issues in this case, of course, concern the fact that Mr. Ray had previously been disciplined for similar misconduct. And the fact that, based on all of the evidence that was considered by the board, that there was extensive evidence before the board that Mr. Ray had abused his authority, abused his power, had been threatening and untrustworthy. And it was upon that basis that the decision-maker determined that he was unfit for service in the Army under any circumstance and that he should not be appointed to any non-supervisory position or retained in the Army because of that breach of trust. And so it's upon that basis that I believe that the Army would have sustained its—that the Army would come to the same conclusion. I certainly can't speak for the board, but I think the evidence is there and sufficient that the board could also come to the same conclusion. Mr. Matthews seems to assert that because it was an investigation that somehow that—that somehow contributed to a reprisal or amounted to a reprisal against Mr. Ray. And the facts that—if you look at the facts as they're laid out, is that, in fact, the investigation began as a result of an anonymous email, not any type of disclosure by Mr. Ray and not a purported disclosure by Mr. Ray. And that as a result of that investigation, which began on February 25, 2002, Mr. Ray was on administrative leave at the time that he later, on March 15, several weeks later, where he sent an email that he purports to be the protected disclosure in which he made an accusation that several majors had been acting inappropriately and breaking the law. Now, that's the allegation upon which Mr. Ray is reporting that there was a whistleblowing reprisal, and so I think it's important to point out to the court that that investigation into those allegations only occurred after there was already an ongoing investigation of Mr. Ray. And, of course, as far as inferring intent, when the—when the board found that Mr. Ray had actually spread false information and they inferred intent, it was based on, again, these types of facts where Mr. Ray was on leave. He had a motivation or at least a bias to perhaps taint the investigation or some of the people who were central to it. All right, thank you. Mr. Matthews. First, I'd like to address the issue of whether or not this board is obligated to send this case back if Specification 6 or 7 is not— 6 or 8, right? 6 or 8, that's correct. The answer to that is absolutely not. I'm sorry, it's not 43. It's not 43. It's not 43. I had it in my notes there. The board determined that on the charges, it agreed with the presiding official with respect to the fact that the presiding official determined that these were not significant charges and they most likely would not be sufficient for a removal action. On each of those, the board agreed and left undisturbed, even to the extent that three were not challenged by either the appellant or the agency, and the three that were challenged by the agency, the board sustained and agreed with the presiding official with respect to the fact that they were, in essence, not sufficient to merit a removal. They focused upon the fact that the removal was mandated because in Specification 8, it was clearly a falsification specification. And I would submit that looking at those facts, given that they use the very general terms of inherent probabilities, the basis upon which Mr. Ray reported the March 15 incidents concerning Ms. Lee had nothing to do with the investigation that was in place at the time. The investigation arose out of an email to the editors about Mr. Ray being in charge of raiding military members. That was the principle and the central charge upon which Mr. Ray and everyone else understood that the investigation was taking place. And that's the reason why Colonel Sullivan decided, well, we have to then start another investigation. If, in fact, it was already part of the investigation, there would have been no need. So we would submit that the rationale that is adopted by the board, which is just pulled out of no place, is that because of this two-week delay, somehow that meant that he was trying to influence an ongoing investigation. It's just inherently improbable. But in any event, there is just no way that a reasonable person looking at those facts would find that the agency has proved by a preponderance of evidence that it would have removed Mr. Ray based upon what happened when he communicated to the colonel and the discussion between himself and Mrs. Lee. I think that's important because— But they wouldn't necessarily have allowed him to remain in that position, would they? And that's the issue, Your Honor, with respect to the Douglas factors. And Colonel Gilmore testified he never even looked at his performance. Douglas factors specifically require that that be evaluated. He assumed that it was honorable, which is a term that is more military than civilian. But in any event, the Douglas factors allow the decision-maker to look at whether it was marginal, satisfactory, or an outstanding performer. In this case, without question, Mr. Ray was an outstanding performer. That never came to Mr. Gilmore's or Colonel Gilmore's attention. He never considered it. He also never considered the fact when he was asked that he could have, in this instance, returned him to his former non-supervisory job, except for his general statement under the Douglas factors, of saying that I considered all of the Douglas factors. This court and the board has stated that that's not enough, that the deciding official has to be particular as to what he considered under the Douglas factors. He can't just parrot the language of the Douglas factors himself. And it's for that reason, we believe, that when the board looks at this, if 6 and 7 cannot be sustained, there is no case. 6 and 8. 6 and 8, excuse me. Okay. Thank you very much. The case is submitted. All rise. The honorable court has adjourned until 2 o'clock this afternoon. Thank you.